IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| GARY L. WILSON,<br><br>   Petitioner,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner<br>of Social Security Administration,<br><br>   Respondent. | Case No. CV 04-0200-S-MHW<br><br>**MEMORANDUM DECISION<br>and ORDER** |

## INTRODUCTION

Currently before the Court for its consideration is the Petitioner's request for judicial review (Docket No. 1) of the Respondent's denial of social security disability benefits, filed on April 21, 2004. Petitioner brought this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g). The Court has reviewed the petition for review and the answer, the parties' memorandums, and the administrative record, and submits its Memorandum Decision as follows.

**Memorandum Decision and Order - Page 1**

# I.
# Background.

**A.     Administrative Proceedings.**

Petitioner Gary L. Wilson had filed a previous application for disability benefits on December 23, 1999. (AR 56-58, 96-99). This claim was denied initially, upon reconsideration and by an ALJ determination on March 1, 2001. (AR 181,192). Petitioner petitioned the Appeals Council for review of the ALJ's decision, which was denied on June 4, 2001. (AR 193-194). Petitioner filed new applications for a period of disability, disability insurance benefits, and supplemental security income on September 24, 2001. (AR 219). He alleged disability since March 13, 2001. (AR 378). The applications were denied initially and again upon reconsideration. (AR 355, 362). After making a timely request for hearing, Petitioner, represented by counselor Andrea Cardon , appeared and testified before Administrative Law Judge (ALJ) John Arkoosh on February 25, 2003. James Grissom testified as a vocational expert. (AR 373, 415-424). Dr. Michael Dennis testified as a medical expert. (AR 373, 407-414). At the hearing, Petitioner asked for a closed period of disability from March 13, 2001 to February 12, 2003. (AR 378).

ALJ Arkoosh considered the testimony and all other evidence of record, and on May 29, 2003, issued a decision finding Petitioner not disabled within the meaning of the Act, and therefore not entitled to disability insurance benefits or supplemental security income. (AR 24). This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision on February 27, 2004. (AR 9-12)  20 C.F.R. §§ 404.981, 416.1481

**Memorandum Decision and Order - Page 2**

(1991). Petitioner has exhausted all administrative remedies and is therefore seeking judicial review pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**B.     Statement of Facts.**

At the time of the hearing before the ALJ, Petitioner was 60 years old. (AR 19). Petitioner testified that he completed high school (AR 19). Petitioner's prior work experience includes employment as a warehouse worker, shipping/receiving worker, cashier, and bartender. (AR 19). Petitioner alleged disability since March 13, 2001, due to hearing loss, gallstones, skin cancer, and depression. (AR 20).

Since losing his job, Petitioner has been treated and/or evaluated by various medical professionals for worsening depression. On March 27, 2001, Petitioner complained of increasing problems with depression and he was prescribed three 20 mg capsules of Prozac a day. (AR 267). In a follow up exam, Petitioner did not report any improvements in his condition. He noted that he experienced significant difficultly falling and staying asleep at night. (AR 266).

Petitioner was referred to Southwest Idaho Ear, Nose and Throat and set up an appointment for February 21, 2002. Becky Bishop, M.S. CCC-A noted that Petitioner reported a decrease in hearing for the past two years and had been wearing hearing aids for the last one and half years. Petitioner brought his hearing aids with him, but they were no longer functioning. He also stated that he suffered from intermittent ringing tinnitus in both ears. After examining Petitioner, Bishop noted: "Pure tone thresholds revealed a mild to severe sensorineural hearing loss in the right ear and moderate to profound sensorineural hearing loss in the left ear. Speech

reception thresholds agreed with pure tone averages with poor speech discrimination." (AR 283).

Dr. Seidenfeld examined Petitioner on February 21, 2002. Dr. Seidenfeld also noted that Petitioner had "a very significant auditory problem and it was necessary to speak very, very loudly to him which made this a rather difficult interview." (AR 285). He diagnosed Petitioner with: Axis I: Major Depressive Disorder, recurrent, with mood congruent psychotic features, Alcohol dependence in early full remission; Axis II: Personality Disorder, not otherwise specified, with anti-social personality features, prior history; Axis III: Hearing problems, left arm weakness; Axis IV: Economic problems; and Axis V: GAF 47. (AR 293). Dr. Seidenfeld found it difficult to have a normal conversation with him due to his impaired hearing. He stated, "it is necessary to face him directly and speak very slowly and this would doubtless be rather tiring for anyone had to interact with." Dr. Seidenfeld further noted Petitioner's history of aggressive behavior and resentment of authority, which has caused Petitioner to encounter difficulties interacting with bosses.

In the Spring of 2202, DDS Psychologists Maxim Callao, Ph.D. and Dave Sanford, Ph.D, found Petitioner's mental residual functional capacity assessment to be moderately limited in his ability to maintain attention and concentration for extended periods; his ability to perform activities with a schedule, maintain regular attendance, and be punctual with customary tolerances; and in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods. (AR 305-307).

**Memorandum Decision and Order - Page 4**

On July 15, 2002, Dr. Shana D. Fogarty, M.D. examined Petitioner and he reported significant depression with history of suicidal thoughts and current suicidal thoughts with access to numerous hunting rifles.  Petitioner stated he had no energy and no appetite, remaining sad and hopeless.  (AR 327).  He scored a 50 on his Beck inventory and his Effexor prescription was increased from 75 to 150 milligrams.  With respect to his history of weight loss, Dr. Fogarty attributed it to Petitioner's depression, but could not rule out the possibility of colonic and prostatic cancer.  After a CT scan was performed, which indicated the presence of sclerosis in the coronary arteries and thoratic aorta and mild cental lobular emphysema in the bi-apical regions. (AR 327).

In a follow up session conducted on August 26, 2002, Petitioner did not seem to be improving.  He stated he had frequent suicidal thoughts and continued to feel sad and hopeless.  Dr. Fogarty noted that he was unemployed, which significantly limited his ability to obtain new hearing aids thereby contributing to Petitioner's struggle to communicate.  Petitioner refused to be hospitalized.  (AR 326).  When Petitioner returned on September 24, 2002, he scored a 48 on the Beck Depression Scale and again refused to be hospitalized.  Petitioner was not sleeping and reported feeling hopeless.  (AR 325).

On September 27, 2002, Petitioner returned for an appointment at the Boise Speech and Hearing Clinic.  Brek Stoker, MS, CCC-A, a clinical audiologist, noted that Petitioner suffered from significant hearing loss and his hearing aids did not work.  (AR 334).  Stoker recommended that Petitioner be fitted for hearing aids and that he obtain hearing aids for his telephone.  Later, on April 5, 2003, Stoker submitted a letter, opining that Petitioner met Listing 2.08. (AR 349).

**Memorandum Decision and Order - Page 5**

Throughout the rest of 2002, before Stoker's letter, Petitioner's condition remained largely the same, although he did experience a decrease in his Beck Depression Inventory score to 44 (AR 324), then to 42 (AR 322).  He reported enjoying his new puppy and expressing hope that he would be able to spend Christmas with a friend in Seattle (AR 323).  As of December 20, 2002, Petitioner maintained a diagnosis of severe depression with very low energy.  However, he expected to receive a new hearing aid and he confirmed his holiday plans to go to Seattle.

## II.

### Findings of the Administrative Law Judge.

In the decision issued following the hearing (AR ), the ALJ made specific findings as follows:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § § 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527 and 416.927).

7. The claimant has the following residual functional capacity: [sic].

8. The claimant's past relevant work as cashier and delivery driver did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § § 404.1565 and 416.965).

9. The claimant's medically determinable hearing loss, depression, and history of alcohol abuse do not prevent the claimant from performing his past relevant work as a delivery driver and cashier.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § § 404.1520(e) and 416.920(e)).

## III.
## Standard of Review.

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); and *Flaten v. Secy of HHS,* 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v. Sullivan*, 903 F.2d 1229 (9th Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993).

The Social Security Commissioner has established a five-step evaluation process in order to determine whether a person is disabled for purposes of awarding disability benefits.  20 C.F.R. §§ 404.1520, 416.920 (1996)*; Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).  First, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  If the claimant is engaged in such activity, disability benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  The ALJ determined that the Petitioner was not involved in any substantial gainful activity.  (AR 19).

Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1529(d)(1); and 416.929(d)(1).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.  The ALJ here found that Petitioner Wilson's  impairments of relating to his gallstones did not significantly limit his ability to engage in basic work activities and therefore did not constitute a severe impairment.  (AR 20.)  Petitioner also testified at the hearing that he suffered from skin cancer.  However the ALJ did not find any objective medical evidence indicating that Petitioner required further treatment, other than scalpel removal, for his seborrheic keratosis.  Therefore, the ALJ did not find this constituted a severe impairment.  (AR 20).  Petitioner also made brief mention of problems with mild emphysema with hardening of the arteries, but when questioned at the hearing, he reported nothing wrong with his lungs, denied taking any medication, and continued to smoke 3 to 4 cigars a day.  Because no significant clinical evidence is present in the record with respect to these impairments, the ALJ did not address whether they constituted a severe impairment.  However, the ALJ did find that

**Memorandum Decision and Order - Page 9**

Petitioner's depression, hearing loss, and alcohol abuse did significantly limit his ability to engage in basis work activities and therefore did constitute a severe impairment. (AR 20).

If the impairment is severe, the Commissioner proceeds to the third step of the evaluation process to determine whether the claimant has an impairment which meets or equals those contained in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4.  20 C.F.R. §§ 404.1520(d); 416.920(e).  Appendix 1 contains a list of impairments which would prevent a person from engaging in substantial gainful employment.  If a claimant can show he or she is limited by such an impairment, disability is presumed.   The ALJ here determined that Petitioner did not possess the findings upon examination which are required in order for disability to be predicated on medical considerations alone, and that Petitioner's impairments did not meet or equal the severity of any listing for depression, hearing loss, or alcohol abuse.  (AR 20, 21.)

If the impairment is not one that is presumed to be disabling, then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e. whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine whether the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.

**Memorandum Decision and Order - Page 10**

20 C.F.R. §§ 404.1520(f), 416.920(f).  In the instant case, the ALJ determined from the evidence that the Petitioner has no exertional, postural, manipulative, or visual limitations.  The claimant has limited hearing (even with appropriate hearing aids) so that he must avoid even moderate exposure to noise or hazards.  (AR 22).  The ALJ noted that Petitioner has mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.  (AR 22).  Based on the ALJ's assessment of Petitioner's residual functional capacity, the ALJ determined that Petitioner could perform his past relevant work as a cashier and delivery driver.  On the basis of this review, the ALJ determined that Petitioner was not disabled within the meaning of the Act.

## IV.

## Issues Raised.

The primary issue before the Court is whether the final decision of the Secretary is supported by substantial evidence and whether it is based on proper legal standards.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Petitioner contends that the ALJ erred in the following respects:

    1) Whether the ALJ properly supported his finding that the Petitioner was not credible.
    2) Whether the ALJ properly supported his finding that Petitioner could return to his past

relevant work as a cashier and delivery driver.

    The Court will take each argument in order.

A.  **Petitioner's Credibility**

Petitioner argues that the ALJ improperly rejected his testimony on the basis of his daily activities.  In evaluating Petitioner's credibility, the ALJ noted Petitioner's testimony that he had lost thirty pounds in the past couple of years from depression, worry, and anxiety.  Petitioner also testified he could not perform his past relevant work and could not sustain work for an eight-hour day because he had no energy and did not sleep at night.  The ALJ further noted Petitioner's testimony that his concentration is only fair and is memory is poor.  In addition, Petitioner stated the his left arm had a cyst removed, his right arm is weak, and he suffers from emphysema.

The ALJ continued his rendition of Petitioner's testimony and daily activities, noting that Petitioner smokes three to four cigars a day.  Petitioner also testified that he does his own cooking and most of his own housework.  The ALJ observed that Petitioner is active socially and likes to do such activities as hunting, fishing, and visiting with friends.  He attends church each week.  Normally, Petitioner gets out of bed between 7:30 and 8:30 each morning, lets out the dog, and then watches approximately six hours of television each day.  In the afternoon, he runs errands and goes to doctor's appointments.  In the evening, he walks the dog, watches more television and retires for the evening about 10:30.  Petitioner also testified that he is currently living off the proceeds of the sale of his home in Garden Valley, but he is working with vocational rehabilitation in an effort to secure hearing aids so he can become employed.

The ALJ did not find Petitioner's testimony to be fully credible.  Courts have consistently held that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *See Meanel v. Apfel,* 172 F.3d at 1113; *Saelee*

**Memorandum Decision and Order - Page 12**

*v. Chater,* 94 F.3d 520, 522 (9th Cir. 1995).  A claimant may not rely upon mere allegations of pain to meet his burden of proof, but must substantiate such allegations with objective medical findings which could reasonably be expected to produce the alleged pain or other symptoms.  *See* 42 U.S.C. § § 423(d)(5)(A) and 1382c(3)(H).  The effect of pain can be assessed within an individual's functional capacity and then an ALJ may evaluate the credibility of a claimant's statements about the pain.  *Id.*  Although a claimant may produce objective medical evidence of an underlying impairment, an ALJ may nonetheless reject the claimant's testimony about the severity of the pain if the ALJ can state specific, clear, and convincing reasons for doing so.  *Smolen v. Chater,* 80 F.3d 1273, 1281-1282 (9th Cir. 1996).  An ALJ is not required to believe every allegation of disabling pain because it would be contrary to 42 U.S.C. § 423(d)(5)(A), and while many medical conditions produce pain it is not always severe enough to preclude gainful employment.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).  While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms. *See Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987) (regarding testimony of pain and depression).

In discounting the severity of Petitioner's allegations, the ALJ first noted Petitioner testified he enjoyed a variety of activities, including hunting and fishing.  The ALJ found this testimony directly contradicted his other statements that he could not work for an eight-hour day.  The ALJ specifically noted that Petitioner's allegations of fatigue were inconsistent with his spending a few days hunting elk in October 2002, traveling to Seattle to visit a friend over Christmas, fishing when he can, and working with vocational rehabilitation to secure employment.  The ALJ further observed that Petitioner lives alone, takes care of his own

**Memorandum Decision and Order - Page 13**

household, including a dog, and admits to chopping his own wood.  The ALJ also dismissed Petitioner's testimony that he suffered from fatigue, shortness of breath, and weakness, finding that the record did not contain any evidence of a medically determinable impairment, which would cause these symptoms.

In addition, the ALJ relied upon inconsistencies in Petitioner's testimony as a basis for rejecting his statements.  When questioned initially, Petitioner reported a significant amount of activity.  Yet, when questioned by his attorney, the ALJ noted Petitioner complained that he did not want to see anyone, will not go anywhere, and prefers to spend the day in bed.  The ALJ found this testimony to be contradicted by the medical record.  Petitioner reported to Dr. Fogarty that he received significant support from his friends and Dr. Fogarty found that Petitioner continued to be stable.  In sum, the ALJ relied on both subjective and objective evidence in concluding that Petitioner's testimony is not credible.  The reasons stated by the ALJ in reaching his conclusion are found to be clear and convincing.  Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's finding that Petitioner's testimony in this regard was not credible.  Accordingly, the Court finds that the ALJ's and the Appeals Council's decision in this regard is supported by substantial evidence and that the decisions should not be reversed.

**B.    Past Relevant Work**

The ALJ found that Petitioner's past relevant work as cashier and delivery driver did not require the performance of work-related activities precluded by his residual functional capacity.  In so finding, the ALJ relied upon testimony from the vocational expert based upon a hypothetical individual similarly situated to Petitioner.  Here, the hypothetical posed to the

expert by the ALJ envisioned a claimant with the following characteristics: Petitioner's age, education and past work experience with no exertional, postural, manipulative, or visual limitations; suffering from limited hearing with a need to avoid even moderate exposure to noise and hazards; and mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  Specifically, the ALJ asked the vocational expert to review two residual functional capacity assessments, one a Mental Residual Assessment (AR 305-309) and, the other, a Physical Residual Functional Capacity Assessment.  Both assessments were performed by physicians at DDS, neither of whom personally examined Petitioner.  The vocational expert was also asked to consider Dr. Dennis' testimony relating to Petitioner's mental residual functional capacity as an over burden.  The Physical Residual Functional Capacity Assessment only described Petitioner's hearing as "limited," but did not define the severity of the limitation.  Without seeking a definition or explanation of "limited," the vocational expert stated he believed that Petitioner could return to his former employment as cashier and delivery driver.

A question arises as to how to define "limited" in the context of Petitioner's hearing loss.  When pressed by Petitioner's counsel why a limitation on Petitioner's hearing and speaking would not affect his ability to perform a job as a cashier, the vocational expert asked for further clarification as to what the term "limited" was meant to signify, i.e. a slight, moderate, or severe limitation.  In response to this question, the ALJ stated he had no idea "whatsoever."  (AR 421).[1]

---

[1] The questioning by Petitioner's counsel reads as follows:

> Q: (Attorney) I guess I'm curious how as he could continue to do some of his past work as cashier and bartender with those kinds of limitations because those professions, to me,

**Memorandum Decision and Order - Page 15**

Petitioner's counsel then asked the vocational expert to assume that the limitation on Petitioner's hearing was severe and the vocational expert conceded that the cashier job would be eliminated under those circumstances.

There is of course evidence in the record as to the severity of Petitioner's hearing loss. Dr. Mark B. Emery noted in December of 1999 Petitioner's bilateral sensorineural hearing loss was marked. (AR 138). In February 2002, Becky Bishop M.S., CCC-A noted that his hearing loss on the right side was mild to severe and on the left side was moderate sloping to profound. (AR 203).[2] Dr. Seidenfeld also noted Petitioner has "a very significant auditory problem and it was necessary to speak very, very loudly to him which made this a rather difficult interview." (AR 285). He further stated: "He has difficulty having normal conversation because of his hearing problems and it is necessary to face him directly and speak very slowly and this would doubtless be rather tiring for anyone he had to interact with [sic]." (AR 293). In addition, Petitioner testified he had trouble hearing people on the phone without a hearing aid device.

Thus, the opinion of the expert cannot be relied upon by the ALJ, because the hypothetical is incomplete and does not accurately reflect Petitioner's limitations. Hypothetical questions posed

---

need communication and I'm just curious how he could continue doing –

A: Well, you know, I suppose we need a definition here. How limited is limited? I guess what we need is something like severe, slight, that sort of thing.

Q: (Attorney) Your Honor, do you have any idea what these are meant to specify?

A: (ALJ) I have none whatsoever.

[2]Bilateral means that both ears have a hearing loss. Moderate sloping to profound means the hearing loss is mild for the lower frequencies, but profound for the higher frequencies, while mild sloping to severe means the hearing loss is mild at the lower frequencies and severe at the higher frequencies. Sensorineural means that the cochlea or auditory nerve is not working correctly and cannot be corrected with surgery unlike conductive hearing loss. Because of the very severe hearing loss at the highest frequencies, the individual may not be able to hear some speech sounds at all.

**Memorandum Decision and Order - Page 16**

to the vocational expert must set out all the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights. *Desrosiers v. Secretary of Health and Human Services*,, 578 (9th Cir. 1988) (Pregerson, J., concurring) ("The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984); *see Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980) (testimony of vocational expert must be reliable in light of medical evidence in order to qualify as substantial evidence).

Yet, the vocational expert did not consider any of this evidence as to the more precise nature of Petitioner's hearing impairment. Instead, the vocational expert was forced to rely on a amorphous term –"limited"– without an understanding of what it was intended to signify. Therefore, the assumptions in the hypothetical did not accurately reflect Petitioner's condition, and the vocational expert's opinion is deemed to have no evidentiary value. If the vocational expert's answers are to be useful, the hypothetical questions must be framed in terms of the claimant's specific functional limitations, not in terms of arbitrary and general assumptions regarding degrees of impairment.

Accordingly, the Court finds the Commissioner was not substantially justified in defending the ALJ's decision based on the vocational expert's opinion. With no basis to review the legitimacy of the ALJ's finding that Petitioner could perform his past relevant work, the Court reverses the denial of benefits and remands for further proceedings. On remand the ALJ shall make

**Memorandum Decision and Order - Page 17**

findings as the severity of Petitioner's hearing loss, and frame hypothetical questions to a vocational expert based on those functional limitations.[3]

# V.
# Conclusion.

The Court finds it necessary for this matter to be remanded for further hearing and consideration by the ALJ, in accordance with the discussion above, in order to determine whether the severity of the Petitioner's hearing loss rendered him unable to perform his past relevant work during the closed time period.

# ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court

**IT IS HEREBY ORDERED that**:

1)   Petitioner's Petition for Review (Docket # 1), is GRANTED.

2)   This action shall be REMANDED to the Commissioner for review in accordance

---

[3] It should also be noted that substantial evidence exists in the record that Petitioner's condition is significantly improved with a hearing aid.  A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.  *See* 20 C.F.R. § 416.930(b).  Refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *Id.* In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored. This finding must be supported by substantial evidence. *Id*; *see also Nichols v. Califano,* 556 F.2d 931(9th Cir. 1977).

Because it appears that Petitioner would not fall within the definition of disabled with use of proper hearing aids, the record should be developed with respect to whether Petitioner was justified in failing to obtain proper hearing aids before the end of the closed period.  Petitioner argues in his brief that he was initially unaware of the options available to him and he could not afford new hearing aids.  Social Security Ruling 82-59 lists such financial inability as a justification for failure to follow a prescribed medical treatment. Specifically, the ruling states that noncompliance may be justified if the claimant "is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable.... All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored." See Social Security Ruling 82-59; *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (acknowledging that a failure to follow a prescribed treatment may be justified when the claimant cannot afford the treatment).  However, because this issue was never addressed below and merely mentioned in Petitioner's brief, this Court makes no findings and reaches no conclusions in this regard.

**Memorandum Decision and Order - Page 18**

with this order.

    3)    This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g), and *Akopyan v. Barnhart,* 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 30, 2005

_____
Honorable Mikel H. Williams
United States Magistrate Judge